IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,   :
       :
    **Plaintiff,**   :
       :
    **v.**   :  **Case No. 26 -cv-1379**
       :
**ALLEGHENY HEALTH NETWORK,**   :  **Re: ECF No. 2**
**HIGHMARK HEALTH, HERITAGE VALLEY**
**HEALTH SYSTEM, INC., HERITAGE**
**VALLEY HEALTH SYSTEM FOUNDATION,**
**and VALLEY MEDICAL FACILITIES, INC.**
       :
    **Defendants.**   :
       :

## FINAL ORDER

## I.   INTRODUCTION

Plaintiff, the Commonwealth of Pennsylvania, by and through the Office of Attorney General, filed its Complaint on June 24, 2026 under Section 7 of the Clayton Act, 15 U.S.C. §18, alleging that Allegheny Health Network's ("AHN") proposed acquisition of Heritage Valley Health System, Inc.[1] ("HVHS") will substantially lessen competition in one or more relevant health care services markets. AHN and HVHS contest the allegations of the Complaint and wish to assure the Commonwealth and the communities they serve that such acquisition, if permitted to proceed, will occur in accordance with their respective missions and a commitment to the provision of high quality, affordable health care services to the community.

---

[1] Pursuant to the Affiliation Agreement executed on October 15, 2025, by and among Heritage Valley Health System, Inc. ("HVHS"), Heritage Valley Health System Foundation, Allegheny Health Network ("AHN"), and Highmark Health, AHN will become the sole corporate member of Valley Medical Facilities, Inc. ("VMF"). Immediately prior to Closing, HVHS will cause VMF to merge with and into HVHS, whereby VMF will be the surviving acquired entity.

The parties, by their respective attorneys, have consented to the entry of this Final Order without trial or adjudication of any issue of fact or law, and without this Final Order constituting any evidence against, or any admission by any party regarding any such issue of fact or law.

Therefore, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## II.    JURISDICTION

This Court has jurisdiction over the parties and subject matter of this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and 26).

## III.    DEFINITIONS

As used in this Final Order:

1.    "Acquire" means to purchase the whole or the majority of the assets, stock, equity, capital or other interest of a corporation or other business entity or to receive the right or ability to designate or otherwise control the majority of directors or trustees of a corporation or other business entity.

2.    "AHN Beaver" refers to Heritage Valley Beaver after Closing.

3.    "AHN Health Care Providers" means any AHN hospital except AHN Heritage Valley; AHN physician practices that do not presently serve Beaver County, Pennsylvania; and other AHN Health Care Providers including but not limited to home health providers, durable medical equipment providers, and imaging centers.

4.    "AHN Heritage Valley" refers to HVHS after Closing, an entity of which AHN will be the sole member post-Closing, including AHN Beaver and AHN Sewickley.

5.    "AHN Physician Practice" means any of the corporations controlled by AHN which employs physicians, including physicians in the Geographic Market, which may include but is not limited to Allegheny Clinic.

6.    "AHN Sewickley" refers to Heritage Valley Sewickley after Closing.

7.    "Allegheny Health Network" ("AHN") is a nonprofit, tax-exempt corporation organized under the laws of the Commonwealth of Pennsylvania having its principal address at 120 Fifth Avenue, Pittsburgh, PA 15222.

8.    "Charity Care" means the actual cost of uncompensated care provided to indigent, uninsured and underinsured patients. Charity Care shall be calculated as the sum of the actual costs of uncompensated care, discounted costs of care, and forgiven charges for the actual costs of care that were the responsibility of the indigent, uninsured and underinsured patients to pay and who qualified for free, discounted or forgiven costs at the time the care was rendered. Charity Care shall not be calculated or based upon the amount of any unpaid charges or the value of volunteer services.

9.    "Closing" means the satisfaction of all conditions and occurrence of all events necessary to transfer control of HVHS to AHN.

10.    "Definitive Agreement" means the Affiliation Agreement by and among Heritage Valley Health System, Inc., Heritage Valley Health System Foundation, Allegheny Health Network, and Highmark Health dated October 15, 2025.

11.    "Geographic Market" for purposes of this Final Order, but without constituting AHN's or HVHS's agreement that the same is a relevant geographic market for antitrust purposes, means Beaver County and northwest Allegheny County.

12.    "Health Care Provider" means hospitals, laboratories, physicians, physician networks and other health care professionals.

13.    "Health Plan" means any type of organized health service purchasing or third-party payment program, including, but not limited to, health insurance and managed-care

plans, whether offered by government, for-profit or nonprofit, third-party payors, Health Care Providers or any other entity, including Commercial, Medicare Advantage and Medicaid Managed Care Health Plan, that contracts for health care services including, inpatient and outpatient hospital services, physician services and other ancillary services.

14. "Heritage Valley Beaver" is a nonprofit hospital organized under the laws of the Commonwealth of Pennsylvania, with its principal address at 1000 Dutch Ridge Rd, Beaver, PA 15009, owned and operated by HVHS located in Beaver, Pennsylvania.

15. "Heritage Valley Health System" ("HVHS") is a nonprofit, tax-exempt corporation based in Beaver, Pennsylvania, which controls Heritage Valley Beaver, Heritage Valley Sewickley, and other Health Care Providers. HVHS is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal address at 720 Blackburn Road, Sewickley, PA 15143.

16. "Heritage Valley Health System Foundation" (the "Foundation") is a nonprofit, tax-exempt corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal address at 1000 Dutch Ridge Road, Beaver, PA 15009. The Foundation is a subsidiary of HVHS and a supporting organization of Defendant Valley Medical Facilities, Inc.

17. "Heritage Valley Sewickley" is a nonprofit hospital organized under the laws of the Commonwealth of Pennsylvania, with its principal address at 701 Broad St, Sewickley, PA 15143, owned and operated by HVHS located in Sewickley, Pennsylvania.

18.  "Highmark Health" for purposes of this Final Order refers to the entire integrated healthcare system consisting of Highmark Health as parent and all subsidiary corporate entities comprising the system. Highmark Health is the ultimate parent entity of AHN.

19.  "Highmark Inc." is a health plan licensed by the Pennsylvania Insurance Department. Highmark Inc. is a nonprofit corporation with its principal address at Fifth Avenue Place, 120 Fifth Avenue, Pittsburgh, Pennsylvania 15222 and is an affiliate of Highmark Health.

20.  "Hospital" means a health care facility, licensed as an acute care hospital, having a duly organized governing body with overall administrative and professional responsibility and an organized professional staff that provides 24-hour inpatient care, that may also provide outpatient services, and that has as a primary function the provision of inpatient services for medical diagnosis, treatment and care of physically injured or sick persons with short term or episodic health problems or infirmities.

21.  "HVHS Payor Contract" means a contract between HVHS and a Health Plan for the furnishing of inpatient and/or outpatient health care services at HVHS and for physician services at HVHS, and that is in effect currently and as of the date of Closing. A HVHS Payor Contract includes any such contracts for Commercial, Medicare Advantage and Medicaid Managed Care products, unless specified otherwise.

22.  "Most Favored Nations Clause" ("MFN") means any written or unwritten agreement between a Health Care Provider and a Health Plan that prevents the Health Care Provider from offering a lower reimbursement rate, or preferable term or condition to another third-party payor than the Health Care Provider provides to that Health Plan.

23. "Primary Care Physician" ("PCP") means a physician practicing internal medicine, family practice or general practice to patients eighteen years of age and older or are otherwise deemed non-pediatric patients.

24. "Primary Practice Location" means the health care facility at which a physician spends the largest number of hours per week engaged in patient encounters among all such locations where such physician practices.

25. "Restrictive Covenant" means any restriction including, but not limited to, a covenant not to compete, non-solicitation covenant or a noninterference covenant, which would limit a Health Care Provider's ability to practice medicine.

## IV.    TERMS

From and after the Closing, for the period set forth below, AHN Heritage Valley and AHN shall comply with the following to the extent applicable to each of them:

26. AHN Heritage Valley shall continue to provide the community it serves with quality, affordable health care services in accordance with its mission and as part of a health care system of which Highmark Health, a nonprofit, tax exempt corporation is the parent. AHN and Highmark Health's previously agreed upon investment with HVHS shall be used in the Geographic Market for AHN Heritage Valley.

27. **Maintaining AHN Beaver as an Acute Care Hospital** – AHN, as the parent of AHN Beaver, to the extent permitted by the Pennsylvania Department of Health, will maintain AHN Beaver as a general acute care hospital, offering substantially the same scope and level of services and programs as provided by Heritage Valley Beaver at Closing so long as there is sufficient demand in the Geographic Market to support them.

28. **Maintaining AHN Sewickley as an Acute Care Hospital** – AHN, as the parent of AHN Sewickley, to the extent permitted by the Pennsylvania Department of Health,

will maintain AHN Sewickley as a general acute care hospital, offering substantially the same scope and level of services and programs as provided by Heritage Valley Sewickley at Closing, for at least five (5) years as AHN and HVHS have previously agreed.

29. **Radiation Oncology** – AHN, AHN Heritage Valley, or HVHS shall not terminate the joint venture between HVHS and University of Pittsburgh Cancer Institute Cancer Services d/b/a UPMC Cancer Centers ("UPMC/HVHS Cancer Center Joint Venture"), unless for cause due to a material default, breach, misstatement, error, or omission by UPMC Cancer Centers pursuant to the terms of the Corporate Membership Agreement dated as of November 6, 2003, by and between UPMC Cancer Centers and HVHS, or dissolve their jointly formed UPMC/HVHS Cancer Center corporation. In the event the UPMC/HVHS Cancer Center Joint Venture is terminated or the UPMC/HVHS Cancer Center corporation is dissolved, AHN, AHN Heritage Valley and HVHS agree, that to the fullest extent permitted by law, HVHS's ownership interest in the assets currently held by the UPMC/HVHS Cancer Center Joint Venture and UPMC/HVHS Cancer Center corporation, including equipment, facilities and personnel necessary for the provision of high-quality radiation oncology services, will be made available for sale or lease on commercially reasonable terms to another radiation oncology provider that is capable of maintaining and operating the assets to continue providing radiation oncology services at a location selected by the buyer that is within fifteen (15) miles of Beaver, Pennsylvania. A buyer of HVHS's interest in the assets currently held by the UPMC/HVHS Cancer Center Joint Venture and UPMC/HVHS Cancer Center corporation may continue to temporarily operate those assets at AHN Beaver to provide

radiation oncology services on a transitional basis until the buyer is able to relocate those assets as expeditiously as possible to a new location within fifteen (15) miles of Beaver, Pennsylvania.

30. **Charity Care**

    30.1    AHN Heritage Valley and (to the extent within the control of AHN and AHN Heritage Valley) the physicians who practice at AHN Heritage Valley shall remain accessible to persons in the Geographic Market. AHN Heritage Valley will provide a level of Charity Care, as defined in Paragraph 8, that is fully compliant with Internal Revenue Code §501(r) and that is consistent with AHN's system-wide patient financial assistance policy but that in no event is any more restrictive or more limited than the patient financial assistance policy in place at HVHS at the time of Closing.

    30.2    AHN and AHN Heritage Valley agree that any restricted or special purpose funds will be utilized according to the respective restrictions or purposes thereof, as applicable.

31. **Firewall** – AHN and AHN Heritage Valley shall continue AHN's practices of: (a) not sharing the contract rates and terms that AHN Heritage Valley or HVHS has reached with non-Highmark Inc. payors with Highmark Inc.; and (b) not sharing the contract rates and terms that Highmark Inc. has reached with AHN Heritage Valley or HVHS's competitors with AHN Heritage Valley. Nothing shall preclude AHN Heritage Valley, AHN or Highmark Inc. from accessing publicly available price transparency or other information.

32. **Health Plan Contracting**

32.1    AHN shall not terminate for any reason other than cause according to the terms of each such contract a HVHS Payor Contract prior to the end of the contract term in effect at Closing. For purposes of this Agreement, HVHS Payor Contracts with an automatic renewal or "evergreen" provision rather than a fixed term will be kept in place for at least one (1) year from the Closing. Notwithstanding anything in this Paragraph 32.1, AHN shall not be in violation of this Final Order and shall have no further obligations under this Paragraph 32.1 with respect to any Health Plan in the event that the Health Plan's consent is necessary to assign a HVHS Payor Contract to AHN and/or if the Health Plan's consent is necessary to a change of control of HVHS, and such consent is not given.

32.2    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall follow the procedures in this Paragraph 32.2 for negotiations of renewals of existing contracts with health care insurers (Health Plans) as well as negotiations of any new Health Plan contracts:

32.2.1 Prior to the expiration of a Health Plan's existing contract with HVHS for the furnishing of inpatient and/or outpatient health care services (a HVHS Payor Contract), AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself will commence good faith negotiations with the Health Plan for a new Payor Contract with AHN Heritage Valley. If AHN, AHN Heritage Valley, and the Health Plan are unable to reach an agreement on such a contract after

one hundred and twenty (120) days of negotiations, the Health Plan may, at its option, by serving a Notice for Arbitration within thirty (30) days of the end of the negotiations period unless a longer time is agreed to by AHN, AHN Heritage Valley and the Health Plan, commence a Single Last Best Offer Arbitration with AHN and AHN Heritage Valley as set forth in Exhibit A to this Final Order. If no Single Last Best Offer Arbitration is commenced, the Contract shall expire at the end of its term.

32.2.2 AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall negotiate in good faith with each Health Plan that is not a party to a Payor Contract with HVHS (such as those seeking to offer a health plan procured through Pennsylvania's health insurance marketplace (pennie.com) serving Beaver County, seeking to get approval from CMS to offer a Medicare Advantage Plan for Beaver County, or offering a commercial product for either hospital or physician services). If AHN, AHN Heritage Valley and the Health Plan are unable to reach an agreement on such a contract after one hundred and twenty (120) days of negotiations, the Health Plan may, at its option, by serving a Notice for Arbitration within thirty (30) days of the end of the negotiations period unless a longer time is agreed to by AHN, AHN Heritage Valley and the Health Plan, commence a Single Last Best Offer Arbitration with AHN and AHN Heritage Valley as set forth in Exhibit A to this Final Order.

32.3    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall not prohibit any Health Plan from placing AHN Heritage Valley in a tiered Health Plan product for the purpose of steering members to other Health Care Providers or require that the Health Plan place a Health Care Provider in any specific tier in a tiered Health Plan product. Notwithstanding the foregoing, AHN and AHN Heritage Valley shall be permitted to agree to rate discounts in exchange for the inclusion of AHN Heritage Valley in a specific tier of a Health Plan's network products.

32.4    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall not enter into any agreement with any Health Plan for the provision of health care services by AHN Heritage Valley that would prohibit a Health Plan from complying with any applicable consumer transparency law requiring the disclosure of provider-specific cost and quality information to its enrollees or insureds.

32.5    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall not enter into any agreement with any Health Plan (including any Highmark Inc. Health Plan) that includes a MFN provision that guarantees or provides that AHN Heritage Valley or any Health Plan will receive the best payment rate and/or terms that such Health Care Provider or Health Plan gives any other purchaser or payor of the same or substantially the same product or service. AHN may not renew or extend any HVHS Payor Contract without abandoning any term or provision that constitutes an MFN. AHN shall inform the Commonwealth of the presence of an MFN in any

existing HVHS Payor Contract by providing a list of such agreements to the Commonwealth not more than sixty (60) days from entry of this Final Order.

32.6    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall not require a Health Plan to contract for the services of all or certain AHN Health Care Providers (other than AHN-employed or AHN-controlled physicians providing hospital-based services in the event of a Health Plan contract for services at HVHS Beaver or HVHS Sewickley) in order for that Health Plan to obtain a contract for services with AHN Heritage Valley.

32.7    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself, shall offer and not refuse to contract with Health Plans separately for AHN Heritage Valley instead of as part of the entire AHN system.

32.8    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself, shall not impose any new fees to Health Plans that have not historically been charged by HVHS to Health Plans for access to HVHS Health Care Providers.

32.9    AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall not change the site of service designation for hospital services currently provided at HVHS facilities to show that services provided at AHN Heritage Valley facilities are performed by another AHN facility.

32.10   AHN, on behalf of AHN Heritage Valley, and AHN Heritage Valley on behalf of itself shall not enter into any Health Plan contract for healthcare services with AHN Heritage Valley that expressly limits the Health Plan's

ability to contract with non-AHN Health Care Providers. AHN shall not condition any Health Plan contract for healthcare services with AHN Heritage Valley on a Health Plan's agreement not to contract with any other Health Care Provider.

32.11    When providing services to an insured, non-contracted patient covered by the No Surprises Act, AHN Heritage Valley providers shall bill and accept as payment in full the amount provided for pursuant to the No Surprises Act, 42 U.S.C. §§ 300gg-131 and 300gg-132, as amended and subject to the exceptions therein.

32.12    Except for physicians employed by AHN, AHN shall not prohibit independent physicians who are members of any AHN-affiliated physician-hospital network in the Geographic Market from holding privileges at any non-AHN Hospital or from participating in any other physician-hospital networks, Health Plans or integrated delivery systems. This Paragraph 32.12 shall not limit Highmark Inc. as to network requirements, plan design or otherwise.

33.    **Staff Privileges**

33.1    AHN Heritage Valley shall maintain an open medical staff and continue all categories of appointment and staff privileges for all qualified physicians who have staff privileges at Heritage Valley Beaver and Heritage Valley Sewickley. AHN Heritage Valley shall also permit qualified physicians currently in, or who enter, the Geographic Market to apply for appointment and privileges at AHN Heritage Valley.

33.2    AHN Heritage Valley shall continue HVHS's practice of granting privileges to qualified physicians and shall not deny staff privileges based on the number of physicians with staff privileges at AHN Heritage Valley.

33.3    AHN shall not condition continuing or granting medical staff privileges at AHN Heritage Valley upon a physician's agreement not to practice or refer patients to another Health Care Provider or participation in a Highmark Health Plan. This Paragraph 33.3 does not apply to physicians employed by AHN. This Paragraph 33.3 shall not apply to Highmark Inc. and shall not limit Highmark Inc. as to network requirements, plan design or otherwise.

33.4    AHN shall not revoke or decline to renew the privileges of any physician at AHN Heritage Valley solely because that physician is employed by a health system other than AHN.

33.5    The parties agree that AHN may revise AHN Heritage Valley's medical staff bylaws and rules and regulations after Closing to ensure compliance with Pennsylvania Department of Health and Joint Commission licensure and accreditation requirements respectively including ensuring appropriate quality and experience standards are utilized in the credentialing process.

34.    **Operating Room Scheduling** – AHN and AHN Heritage Valley shall ensure that physicians and physician practices historically associated with HVHS continue to have access to operating room time at AHN Heritage Valley on a nondiscriminatory basis, taking into account, among other factors, the physician's or group practice's historic and current level of utilization of AHN Heritage Valley's operating rooms. This obligation will not restrict AHN from relocating a physician's access to other operating

rooms based on non-discriminatory reasons of AHN, due to service line planning decisions, such as changes to sites of care or creation of "centers of excellence."

35. **Referrals and Transfers**

35.1    AHN and AHN Heritage Valley agree AHN Heritage Valley physicians shall refer patients based on the patient's best medical interests in the physician's judgment and on the patient's preference, and not based on any financial incentives of AHN and AHN Heritage Valley.

35.2    AHN Heritage Valley shall transfer any patient, whether for diagnosis or treatment, to a non-AHN Health Care Provider if such transfer is requested by the patient, the patient's representative when such representative is authorized to make care decisions for the patient, or the patient's treating physician; provided that the patient is stable and that the transfer is medically appropriate and legally permissible.

35.3    In the event that a patient receiving treatment at AHN Heritage Valley is in need of a non-emergent transfer, and is covered by a Health Plan with which the proposed destination AHN health care facility does not participate or is not otherwise considered in-network for purposes of such care, AHN Heritage Valley shall transfer the patient to a participating non-AHN health care facility; provided that the patient is stable and that the transfer is medically appropriate and legally permissible, and unless (i) the patient or the patient's representative expresses a contrary preference after being informed of the financial consequences of such a decision, or (ii) otherwise approved by the patient's Health Plan.

35.4    Nothing in Paragraph 35.3 shall require AHN or AHN Heritage Valley to make any inquiry concerning health insurance coverage in a manner that would violate the federal Emergency Medical Treatment and Active Labor Act ("EMTALA").

36.    **Ancillary Services** – AHN Heritage Valley shall not require any health care purchaser or patient to purchase durable medical equipment, nonemergency transportation or home health care services from a Health Care Provider affiliated with AHN. This Paragraph 36 shall not apply to Highmark Inc. and shall not limit Highmark Inc. as to network requirements, plan design or otherwise.

37.    **Health Care Provider Agreements**

37.1    AHN and AHN Heritage Valley will honor all existing employment contracts between HVHS and its Health Care Providers for their stated terms, subject to legal requirements. With respect to any Restrictive Covenant in the existing employment agreements, AHN and AHN Heritage Valley agree that the Restrictive Covenants shall be treated as if they were entered into after January 1, 2025, the effective date of Pennsylvania's Fair Contracting for Health Care Practitioners Act.

37.2    With respect to any renewals of such employment contracts, and for any new contracts with Health Care Providers employed by AHN Heritage Valley, AHN and AHN Heritage Valley agree to the application of Pennsylvania's Fair Contracting for Health Care Practitioners Act.

37.3    For thirty (30) days post-Closing, HVHS Health Care Providers who choose not to continue employment with AHN Heritage Valley will be released from

- 16 -

any Restrictive Covenant and may freely pursue medical practice in the Geographic Market.

38. **Nondiscriminatory Access to AHN Heritage Valley** – AHN Heritage Valley shall not discriminate in the provision of medically necessary services or the release of medical records or information about patients on the basis that these patients are covered by Health Plans or are treated by physicians or other medical providers which are not AHN affiliates.

39. **Price Transparency and EMTALA** – AHN shall ensure that AHN Heritage Valley Health Care Providers shall comply with their obligations under all applicable federal and state price transparency laws and the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

40. **Future Hospital Acquisitions**

40.1    AHN shall not, directly or indirectly, acquire any hospital in Pennsylvania without providing written notice to the Office of Attorney General at least one hundred and twenty (120) days prior to the date of Closing with the content of such notice consistent with the Commonwealth of Pennsylvania, Office of Attorney General Review Protocol for Fundamental Change Transactions Affecting Health Care Nonprofits.

40.2    AHN agrees, in regard to Paragraph 40.1 above, to waive the confidentiality protections under the Hart-Scott-Rodino Act, 15 U.S.C. § 18a(h) and the Antitrust Civil Process Act, 15 U.S.C. §§ 1311, et seq., insofar as these protections in any way limit confidential communications between the Federal Trade Commission or the Antitrust Division of the U.S. Department of Justice

and the Office of Attorney General of the Commonwealth of Pennsylvania concerning a transaction that is the subject of notification under Paragraph 40.1 above, provided that (a) any documents or information obtained by the Office of Attorney General pursuant to such waiver will be protected from disclosure under Section 67.708(b)(10), (11) and (17) of Pennsylvania's Right to Know Law, (b) the Office of Attorney General will not waive these or any other applicable exemption(s) protecting the confidentiality of such information and documents, and (c) the Office of Attorney General shall not disclose such information or documents unless ordered to do so by a court of competent jurisdiction after the exhaustion of all appeals with prior notice to AHN.

41.  **Annual Report** – Within one hundred and twenty (120) days of the Closing of each fiscal year, AHN, on behalf of itself and AHN Heritage Valley, shall submit to the Office of Attorney General an Annual Report on its compliance with all of the provisions of this Final Order including a description of AHN Heritage Valley's provision of the hospital services and charity care identified in Paragraphs 26-30. This Annual Report shall be public provided that AHN proprietary information shall be redacted from the public version.

42.  **Complaint Procedure** – Any person, Health Care Provider, Health Plan or consumer of medical services who wishes to report a possible violation of this Final Order shall send a written description of the alleged violation to the Chief Deputy Attorney General, Antitrust Section, Office of Attorney General, 14th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120. The Office of Attorney General shall transmit the complaint, keeping confidential the name of the complainant, if necessary, to AHN and

AHN Heritage Valley. AHN and AHN Heritage Valley shall respond in writing to the complainant and to the Attorney General within thirty (30) days from the receipt of any complaint. If the complaint is still unresolved, the Attorney General will attempt to negotiate a satisfactory resolution. If AHN and AHN Heritage Valley believe a complaint to be frivolous, they may so advise the Attorney General and their obligations under this Paragraph 42 will be satisfied unless they are otherwise advised by the Attorney General to respond more fully to the complaint. AHN and AHN Heritage Valley will cooperate with the Attorney General to attempt to resolve the complaint.

43.    **Compliance** – To determine or secure compliance with this Final Order or if the Attorney General receives a complaint pursuant to Paragraph 42 of this Final Order, upon reasonable notice during normal business hours, any duly authorized representative of the Attorney General shall be permitted:

43.1    access to all non-privileged books, ledgers, accounts, correspondence, memoranda, other records and documents, in the possession or under the control of AHN and AHN Heritage Valley, relating to any matters contained in this Final Order; and

43.2    to interview officers, managers or employees of AHN and AHN Heritage Valley regarding any non-privileged matters contained in this Final Order.

44.    **Enforcement** – If the Attorney General believes that there has been a violation of this Final Order, AHN and AHN Heritage Valley shall be promptly notified thereof. The Attorney General shall thereafter give AHN and AHN Heritage Valley a reasonable opportunity to cure any alleged violation without instituting legal action. If the alleged

violation is not substantially cured by AHN and AHN Heritage Valley within one hundred and twenty (120) days of the notification, the Attorney General may thereafter seek to undertake any remedial action deemed appropriate. This time period shall be extended in circumstances where the one hundred and twenty (120) day period is not sufficient time to cure the alleged violation.

45. **Binding on Successors and Assigns** – The terms of this Final Order are binding on AHN Heritage Valley, AHN, and Highmark Health as their parent, and to their successors and assigns, including, but not limited to, any person or entity to whom such entities may be sold, leased or otherwise transferred, during the term of the Final Order. AHN and Highmark Health shall not permit any substantial part of AHN Heritage Valley to be acquired by any other entity unless that entity agrees in writing to be bound by the provisions of this Final Order.

46. **Limited Release** – This Final Order releases Highmark Health, AHN, AHN Heritage Valley, or HVHS, only for claims the Office of Attorney General may have in connection with AHN's acquisition of HVHS. All remedies, should other violations of the federal and state antitrust laws be found, shall be available to the Office of Attorney General. Nothing in this Final Order shall prevent the Office of Attorney General from investigating and prosecuting Highmark Health, AHN, AHN Heritage Valley, or HVHS for any other alleged violations of Federal and State antitrust laws. Nothing in this Final Order shall authorize Highmark Health, AHN, AHN Heritage Valley, or HVHS, their employees or subsidiaries, to engage in other conduct that would violate Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1 or 2, or the Pennsylvania common law doctrine against monopolies and unfair restraints of trade.

47. **Legal Exposure** – No provision of this Final Order shall be interpreted or construed to require Highmark Health, AHN, AHN Heritage Valley, or HVHS to take any action, or to prohibit Highmark Health, AHN, AHN Heritage Valley, or HVHS from taking any action, if that requirement or prohibition would expose Highmark Health, AHN, AHN Heritage Valley, or HVHS to liability for negligence (including negligent credentialing or negligence in making referrals) or malpractice. Further, this Final Order or any reports required hereunder shall not be introduced as evidence and cannot be used for any purpose or in any proceeding by a third party.

48. **Settlement of Expenses** – Upon entry of this Final Order, AHN shall pay a total of $75,000.00 toward reimbursement of the Attorney General's costs incurred to conduct its investigation, in settlement of the parties' respective expenses in connection with the investigation, which payment shall be used for future public protection purposes.

49. **Notices** – All notices required by this Final Order shall be sent by certified or registered mail, return receipt requested, postage prepaid or by hand delivery to:

If to the Office of Attorney General:

> Chief Deputy Attorney General
> Pennsylvania Office of Attorney
> General Public Protection Division
> Antitrust Section
> 14th Floor, Strawberry Square
> Harrisburg, PA 17120

If to Highmark Health, AHN, and AHN Heritage Valley:

> Carolyn Duronio
> Chief Legal Officer and Secretary
> Highmark Health
> 120 Fifth Avenue
> Pittsburgh, PA 15222
>
> **Copy to:**
> William Sheridan

Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222

If to HVHS, Heritage Valley Beaver, or Heritage Valley Sewickley:

Norm Mitry
President and Chief Executive Officer
Heritage Valley Health System, Inc.
1000 Dutch Ridge Road
Beaver, PA 15009

**Copy to:**
John Callahan
McDermott Will & Schulte LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606

50. **Averment of Truth** – Highmark Health, AHN, and HVHS aver that, to the best of their knowledge, the information they have provided to the Office of Attorney General in connection with this Final Order is true.

51. **Termination** – This Final Order shall expire on the tenth (10th) anniversary of the Closing.

52. **Retention of Jurisdiction** – The Clerk will, by separate Order, be directed to administratively close this case. Unless this Final Order is terminated early, jurisdiction is retained by the United States District Court for the Western District of Pennsylvania for ten (10) years following the Closing to enable any party to apply to this Court for such further orders and directions as may be necessary and appropriate for the interpretation, modification and enforcement of this Final Order.

53. **No Admission of Liability** – The Commonwealth, Office of Attorney General, AHN, and HVHS desiring to settle their differences without trial or adjudication of any issue of fact or law, have consented to entry of this Final Order, which is not an admission of liability by Highmark Health, AHN, AHN Heritage Valley, or HVHS as to any issue

of fact or law and may not be offered or received into evidence in any action as an admission of liability, whether arising before or after the transaction referenced herein.

54.  **Condition Precedent** – This Final Order shall become null and void if HVHS is not acquired by AHN pursuant to the Definitive Agreement, or if the Definitive Agreement is terminated, enjoined or otherwise not performed.

55.  **Counterparts** – This Final Order may be executed in counterparts.

56.  **Office of Attorney General's Representation** – The Office of Attorney General represents that this Final Order is in the public interest.

DATED: JUNE 24, 2026                    SO ORDERED,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF ATTORNEY GENERAL**

By:_____

    David W. Sunday, Jr.
    Attorney General
    Office of Attorney General
    (717) 787-3391

    Sean Kirkpatrick
    Executive Deputy Attorney General
    Public Protection Division
    (717) 787-4530

    Tracy W. Wertz
    Chief Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Jennifer A. Thomson
    Senior Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Brandon S. Sprecher
    Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Office of Attorney General
    14th Floor, Strawberry Square
    Harrisburg, PA 17120

    Attorneys for the Commonwealth of
    Pennsylvania

**ALLEGHENY HEALTH NETWORK**

By:_____

Jacqueline Bauer
General Counsel, Chief Administrative
Officer, and Corporate Secretary
Allegheny Health Network
120 Fifth Avenue
Pittsburgh, PA 15222

**HERITAGE VALLEY HEALTH**
**SYSTEM, INC.**

By:_____

Norm Mitry
President and Chief Executive Officer
Heritage Valley Health System, Inc.
1000 Dutch Ridge Road
Beaver, PA 15009

**HIGHMARK HEALTH**

By:_____

Carolyn Duronio
Chief Legal Officer and Secretary
Highmark Health
120 Fifth Avenue
Pittsburgh, PA 15222

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF ATTORNEY GENERAL**


By:_____

    David W. Sunday, Jr.
    Attorney General
    Office of Attorney General
    (717) 787-3391

    Sean Kirkpatrick
    Executive Deputy Attorney General
    Public Protection Division
    (717) 787-4530

    Tracy W. Wertz
    Chief Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Jennifer A. Thomson
    Senior Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Brandon S. Sprecher
    Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Office of Attorney General
    14th Floor, Strawberry Square
    Harrisburg, PA 17120

    Attorneys for the Commonwealth of
    Pennsylvania

**ALLEGHENY HEALTH NETWORK**


By: _Jacqueline Bauer_____

Jacqueline Bauer
General Counsel, Chief Administrative
Officer, and Corporate Secretary
Allegheny Health Network
120 Fifth Avenue
Pittsburgh, PA 15222


**HERITAGE VALLEY HEALTH**
**SYSTEM, INC.**


By:_____

Norm Mitry
President and Chief Executive Officer
Heritage Valley Health System, Inc.
1000 Dutch Ridge Road
Beaver, PA 15009


**HIGHMARK HEALTH**


By: _Carolyn Duronio_____

Carolyn Duronio
Chief Legal Officer and Secretary
Highmark Health
120 Fifth Avenue
Pittsburgh, PA 15222

- 24 -

**COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL**


By:_____

    David W. Sunday, Jr.
    Attorney General
    Office of Attorney General
    (717) 787-3391

    Sean Kirkpatrick
    Executive Deputy Attorney General
    Public Protection Division
    (717) 787-4530

    Tracy W. Wertz
    Chief Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Jennifer A. Thomson
    Senior Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Brandon S. Sprecher
    Deputy Attorney General
    Antitrust Section
    (717) 787-4530

    Office of Attorney General
    14th Floor, Strawberry Square
    Harrisburg, PA 17120

    Attorneys for the Commonwealth of
    Pennsylvania

**ALLEGHENY HEALTH NETWORK**


By:_____

Jacqueline Bauer
General Counsel, Chief Administrative
Officer, and Corporate Secretary
Allegheny Health Network
120 Fifth Avenue
Pittsburgh, PA 15222


**HERITAGE VALLEY HEALTH
SYSTEM, INC.**

By:_____

Norm Mitry
President and Chief Executive Officer
Heritage Valley Health System, Inc.
1000 Dutch Ridge Road
Beaver, PA 15009


**HIGHMARK HEALTH**


By:_____

Carolyn Duronio
Chief Legal Officer and Secretary
Highmark Health
120 Fifth Avenue
Pittsburgh, PA 15222

- 25 -

HERITAGE VALLEY HEALTH
SYSTEM FOUNDATION

By: _____

Norm Mitry
President
Heritage Valley Health System
Foundation
1000 Dutch Ridge Road
Beaver, PA 15009

VALLEY MEDICAL FACILITIES,
INC.

By: _____

Norm Mitry
President and Chief Executive Officer
Heritage Valley Health System, Inc.
1000 Dutch Ridge Road
Beaver, PA 15009

**EXHIBIT A**

**SINGLE LAST BEST OFFER ARBITRATION PROCEDURES**

I.    INITIATION

Health Plan may initiate binding arbitration upon satisfaction of the conditions precedent set forth in the Final Order at Paragraphs 32.2.1 and 32.2.2 by filing a Notice for Arbitration with the American Arbitration Association, Health Care Section.

II.   ARBITRATION PROCEDURES

A.    Procedural Rules

The Parties agree that the arbitration shall be governed by the AAA Healthcare Payor Provider Arbitration Rules in effect at the time of the proceeding except where such rules conflict with the agreed rules set forth herein, in which case the rules of this Exhibit A shall control.

B.    Case Administration

The Parties agree that the AAA shall act as the Administrator for the arbitration.

III.  ARBITRATORS

A.    Selection of Arbitrators

1.    Within ten (10) days after receiving a Demand for Arbitration, the Administrator will provide the parties with a list of no less than seven (7) arbitrator candidates.

2.    The Arbitrators must complete the Arbitrator Disclosure Checklist within ten (10) days of their selection.

3.    Each Arbitrator on the list of seven arbitrators must be independent and neutral, and must possess the requisite experience described in Part III.B below. If any party believes that a selected Arbitrator is not independent and neutral, or lacks the requisite experience, that party may petition the Administrator, in writing, to disqualify the Arbitrator. Any such petition for disqualification must be filed within ten (10) days of the Arbitrator Disclosure Checklist of the challenged Arbitrator. If any Arbitrator is disqualified, the Administrator will select a replacement from the AAA roster of arbitrators until a list of seven qualified, independent and neutral Arbitrators is compiled.

4.    Health Plan and AHN/AHN Heritage Valley will then each be granted two (2) strikes from the list of seven Arbitrators. Health Plan and AHN /AHN Heritage Valley will separately identify the two (2) arbitrators they wish to

strike and will rank the remaining five arbitrators sequentially in order of preference. The most highly desired candidate should be ranked "1," the second choice should be ranked "2," etc. If the strikes exercised by Health Plan and AHN/AHN Heritage Valley contain no duplicate names, the remaining three (3) Arbitrators will serve as the Panel for the single last best offer binding arbitration. If the strikes exercised by Health Plan and AHN/AHN Heritage Valley contain a duplicate name or names, the Arbitrator with the highest combined score will be stricken from the list, until three arbitrators remain to serve as the Panel.

5.   The three Arbitrators shall appoint from among them a Chairperson within fifteen (15) days of confirmation of the Panel. If no appointment is made within that time or any agreed extension, the AAA shall appoint the Chairperson.

B.   To be qualified, an Arbitrator shall have at least ten (10) years' experience in the negotiation of contracts, rates and payments between health plans and healthcare providers and/or between health plans and health plan purchasers.

C.   In addition and not contrary to the Rules established herein, at the request of any party, the Arbitrators may take any interim measures deemed necessary with respect to the dispute to further the purpose of these proceedings.

IV.   DISCOVERY & PRE-ARBITRATION PROCEDURE

A.   Confidentiality

1.   The arbitration shall be a confidential proceeding. The Arbitrators shall establish rules for confidentiality and exchange of information designed to ensure fairness for all Parties involved. The Arbitrators and the Parties shall ensure that confidential, competitively-sensitive information shared for the purposes of this Arbitration is not disclosed or otherwise disseminated to any third Parties, including, but not limited to other Health Plans or hospitals; in particular Health Plans or hospitals that are part of AHN/AHN Heritage Valley or Health Plan. Further, all such confidential information shall not be used by the Parties for any other purpose apart from this Arbitration process.

2.   Nothing in these Rules is designed to contravene any applicable privilege, including, but not limited to:

a.   Attorney-client privilege

b.   Peer review privilege

c.   Patient-physician privilege

B.    Initial Disclosures

Within fifteen (15) days after the Answer is filed, AHN/AHN Heritage Valley and Health Plan shall exchange Initial Disclosures containing the following:

1.    Identification of persons likely to have information that the disclosing party may use to support its claims or defenses

2.    Identification and qualification of expert witnesses

C.    Discovery

Fact and expert discovery procedures will be agreed upon by the Parties. In the event that the Parties cannot agree, the arbitrators will mandate reasonable and streamlined discovery procedures necessary for an efficient and expeditious resolution of the dispute.

D.    Proposal for Rates and Terms

1.    Initial Offer: Fifteen (15) days after the close of fact discovery, each party shall disclose its initial offer for proposed rates and terms ("Initial Offer").

2.    Best and Final Offer: Seven (7) days after the close of expert discovery, each party shall disclose its best and final offer for proposed rates and terms ("Best and Final Offer"). Each party shall be bound by its Best and Final Offer. No amendments, changes or revisions shall be made to the Best and Final Offer without leave from the Arbitrators. Nonetheless, each party expressly reserves their rights to take further expert discovery, to the extent necessary.

E.    Pre-Arbitration Brief

1.    Fifteen (15) days after the close of expert discovery, AHN/HVHS and Health Plan shall each submit to the Arbitration Panel and all Parties a Pre-Arbitration Brief setting forth in full the arguments and evidence in support of its proposed rates and terms, and to the extent necessary, challenging the proposed rates and terms of the opposing party. This Brief shall also contain any challenges to a proposed expert's experience and expertise, or the method used to support the proposed rates and terms.

2.    The Pre-Arbitration Brief shall also identify any exhibits the Parties may seek to introduce as evidence and witnesses the Parties intend to call to testify.

3.    As part of the brief each party will identify the issues which have been agreed to and those which remain in dispute.

- 29 -

Without leave from the Arbitrators, the Pre-Arbitration Brief shall not exceed thirty (30) pages.

## V. ARBITRATION PROCEEDINGS

### A. Time & Place

The arbitration proceedings shall take place at a time mutually agreed upon by all Parties and the Arbitrators. If the Parties cannot agree on such matter, the time of the proceedings shall be fixed by the Arbitrators. The proceedings shall take place no more than ten (10) days after submission of the Pre-Arbitration Briefs. The proceedings will be held in Pittsburgh, Pennsylvania.

### B. Record of Proceedings

The Arbitration Proceedings shall be transcribed by a sworn court reporter. The cost of the court reporter and preparation of the record shall be borne equally by AHN/AHN Heritage Valley and Health Plan.

### C. Presentation of Arguments and Evidence

1. Each party shall have the opportunity to give an opening statement and a closing argument.

2. Each party will be given the opportunity to present evidence and witness testimony in support of their proposed rates and terms. The Arbitrators maintain the sole discretion in determining the relevance and materiality of the evidence offered, and any decision by the Arbitrators need not be governed by the Pennsylvania Rules of Evidence.

3. The opposing party shall have the opportunity to cross-examine any witness testimony and otherwise offer rebuttal testimony in support of its position.

### D. Alteration of Proceedings

The Arbitrators shall have the right to alter these proceedings as they deem necessary, but shall afford each party a full, fair and reasonable opportunity to support its position and challenge the position of the opposing party.

## VI. POST-ARBITRATION BRIEF

### A. No more than fifteen (15) days from the close of the Arbitration Proceedings, each party may submit a Post-Arbitration Brief in support of its proposed rates and terms.

### B. Post-Arbitration Briefs may include references to evidence or testimony entered at the Arbitration Proceedings.

- 30 -

C.    Without leave from the Arbitrators, the Post-Arbitration Brief shall not exceed thirty (30) pages.

## VII.   DECISION

A.    No more than fifteen (15) days from submission of Post-Arbitration Briefs, the panel shall issue a decision, in writing, without opinion, selecting the single last best offer that best reflects competitive rates, terms and conditions for healthcare services rendered by AHN Heritage Valley and fair market value for services rendered by AHN Heritage Valley. The panel shall select only one of the offers of either Health Plan or AHN/AHN Heritage Valley and shall not impose its own rates or terms onto the Parties.

B.    The Parties shall be bound by the decision of the Arbitrators, which shall not be subject to further amendment.

## VIII.  COSTS

The Parties shall each bear their own costs arising from the Arbitration process and shall bear one-half of any other costs associated with the Arbitration process, including, but not limited to the Arbitrators' fees.

- 31 -